(105 So. 313)

No. 25565.

## ARNAULD v. VEROT.

(July 13, 1925.)

*(Syllabus by Editorial Staff.)*

**Divorce** ⬦132—**In husband's suit for separation, decree for wife on reconventional demand held warranted.**

In husband's suit for separation a mensa et thoro on ground of abandonment, in which wife answered, alleging cruel and outrageous conduct on his part as her reason for leaving him, and prayed in reconvention for separation from bed and board and other relief, evidence *held* to warrant decree for wife.

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; William Campbell, Judge.

Suit by Camilie Arnauld against Euzeide Marie Verot, in which defendant reconvened. Judgment for defendant, and plaintiff appeals. Affirmed.

John L. Kennedy, of Lafayette, for appellant.

George P. Lessley, of Lafayette, for appellee.

BRUNOT, J. This is a suit for a separation a mensa et thoro, on the ground of abandonment. The petition, the three reiterated summonses to return to the matrimonial domicile, and the judgment of the court ordering a compliance with said summonses, were served upon the defendant, as the law directs. Thereafter defendant filed an answer to the suit, in which she alleges that for more than three years she has suffered from an abdominal tumor; that her illness totally incapacitated her, but, notwithstanding her condition, the plaintiff, although well able to do so, neglected to provide her with the care of a physician and with proper nursing; that during said period the plaintiff was guilty of cruel and outrageous conduct toward her; and that about the month of December, 1920, she discovered him in the act of committing adultery with a negress in their home. Relying upon these allegations, she contends that she was justified in abandoning the matrimonial domicile, and in her answer she reconvened and prayed for a judgment rejecting the demands of plaintiff, and for a judgment in her favor decreeing a separation from bed and board, fixing alimony to be paid defendant, assigning her a domicile during the pendency of the suit, for a dissolution of the community, for an inventory and appraisement of the community property, and for an injunction prohibiting and restraining the plaintiff from disposing of any part of said property. The case was tried, and a judgment was rendered rejecting the plaintiff's demand and in favor of the defendant in reconvention as prayed for in her reconventional demand, and ordering the plaintiff to pay to the defendant $25 per month alimony from February 1, 1921. From this judgment plaintiff appealed.

Appellee has not made an appearance or filed a brief in the case. We assume she has not done so because only questions of fact are involved.

The evidence offered on the trial of the case shows that plaintiff is a farmer and resides in the Eighth ward of Lafayette parish. He was married to defendant in 1913, and they lived together until 1921, when defendant left the matrimonial domicile and has, since that time, resided with her father and mother in the city of Lafayette. About three weeks after the marriage was celebrated, defendant developed an abdominal tumor. Plaintiff called in a physician, who diagnosed the ailment and advised an operation. Defendant declined to submit to an operation. Thereafter defendant was treated from time to time by five or six different physicians, all of whom diagnosed the trouble as a tumor and advised its removal.

Defendant persisted in refusing to submit to a surgical operation, and the continuing growth of the tumor not only caused her great suffering, but, after a year or two, permanently impaired her health. Defendant's reason for refusing to submit to an operation is disclosed by the plaintiff in his testimony on cross-examination, from which we quote the following:

"Q. She told you the reason why she did not want to be operated on was because she was afraid?
"A. Yes, sir; she gave me another reason.
"Q. What is that other reason?
"A. Because she said I would be glad to see her dead.
"Q. She thought you wanted the operation on her to have her killed?
"A. I think so."

In explanation of why she left her husband, the following questions propounded to her on her examination in chief and her answers thereto are enlightening:

"Q. Now, Mrs. Arnauld, when you left your husband, why did you leave him?
"A. Because I was sick. I couldn't do my work at all. I was alone, and also for the reason that I caught him with the negro girl. It was not that I wanted to leave, but it was a case of having to leave.
"Q. Did he or did he not try to keep you from leaving?
"A. Oh, no; on the contrary, he told me to go; he did not see why I wanted to stay there."

Defendant does not remember the exact date, but thinks it was January 11 or 12, 1921. On that date she went to the home of her parents, and since that date the plaintiff has not visited her or contributed one cent to her support and maintenance or towards the payment of her doctor and medicine bills. Her father has paid these bills, and her mother has nursed and cared for her. In every respect, except as to her husband's alleged infidelity, the testimony of defendant is corroborated by that of her father.

It is not denied that plaintiff provided his wife with a home in keeping with his financial ability, and that he provided the home with the necessities of life; but, running through the testimony of both plaintiff and defendant, is the suggestion of defendant's impotency and incapacity for cohabitation, by reason of the abdominal tumor. The plaintiff desired the tumor removed, and defendant feared the result of the operation. Plaintiff's insistence aroused defendant's suspicion, and the subsequent events to which she testified confirmed that suspicion and rendered their living together insupportable. From the record we glean that one of the spouses is hale, hearty, vigorous, and in the prime of life, while the other has become a physical derelict. It is not an infrequent occurrence that under such circumstances, whatever may be the cause which brought about that result, the spouses become estranged and eventually separate. It is only in rare and noble instances that, regardless of the vicissitudes of life, both spouses faithfully respect and observe the letter and spirit of their marital vows. The district judge found that the plaintiff in this case had failed to do so, and that the defendant was helpless and blameless. We have reached the same conclusion, and therefore the judgment appealed from is affirmed at appellant's cost.